The first matter is U.S. v. Ayala, I believe it is King, and Warland G. Murrell. Consolidated matter. Clive Rivers on behalf of Mr. Murrell. Judith Bourne on behalf of Mr. Ayala. All right, Ms. Bourne, I believe you're going first. Daphne Nelson-Jones, United States. I'm sorry, but I'm not hearing you, President. I believe you are going first, and you had asked for additional time, and we ended up doing both sides 20 minutes, Judith Bourne, United States. May I please have the floor? Chief Judge, you came with your laptop. I started to, but I thought, no, I'd better not, so I have all of the paper. Well, you may have been eavesdropping, but I'm always, what is the word, ridiculing my colleagues? Ridiculing is putting it rather mildly, actually. They came in here with a rolling trunk of paper documents, but go ahead. Thank you. I believe, Your Honor, that my first, oh, first of all, Your Honor, I'd like to reserve three minutes of my time. All right. Thank you. I believe that my first argument with regard to the violation of appellant's right to effective assistance of counsel was clearly set forth in the briefs, and I'd like to use my time today to focus on the Miranda issues of my second point. The two prongs to whether the statement of Mr. King should have been suppressed. Why isn't everything that has to do with that issue just a matter of clearly erroneous review by us? And if that's the case, where did the district judge make a clear error? Your Honor, the clear error was in, there are two points, and they're an issue on both points. With respect to the first point as to whether Mr. King was in custodial custody, the judge at the hearing allowed the government to bring in additional testimony from a police officer, although it clearly was available, it was not newly discovered. Is this at the second evidentiary hearing on the motion for reconsideration? Yes. But that was pursuant to your request, wasn't it?  Yes. He did hold a second hearing, that was at that second hearing. Yes, in which he said he wanted to make sure that he had all of the circumstances. He allowed the government to bring in additional testimony, although it was clearly not newly discovered. But why would the newly discovered evidence even apply in that situation? Excuse me? Why would the newly discovered evidence restriction even apply in that situation? He's simply granting your request for reconsideration. He grants a second hearing. Is there any rule that would prohibit him from allowing the market to be reopened? No, Your Honor. And the issue is that he allowed them to, but he would not allow the defense to do exactly the same thing. I thought the reason you had a problem with your testimony was the relevance. You're talking about you wanted to get in some conversations that he had with someone, a relative of your client, I guess. Wasn't that the problem? No, Your Honor. That's not what I'm referring to. I'm referring to the repoffered testimony that Mr. King was handcuffed at his house and was taken in handcuffs to the police car. When was the statement given? Wasn't the statement given in the police house? No. The statement was taken afterwards at the police station. Okay. So the first question was, was he in custodial custody? He said the statement was taken at the police station. Yes. Okay. But there's no doubt that he was in custody when the statement was given, is there? Yes, there was. What difference does it make if he was in custody if the district judge correctly found that he signed the waiver? If he found that he correctly found the waiver, then there is no issue. Isn't that the finding the district court made? That is the finding, and that is the second part of my argument. He found that Mr. King waived his rights, so that obviates, if the district court was correct, that obviates the need to explore further whether or not he was in custody, doesn't it? Yes, it does. Why should we find clear error then on the part of the court with respect to his findings that led to a determination of custody? Yes, that is my second point. What are the errors? What are the errors that we can find from this record? The key to whether, well, first of all, there was a waiver that was signed, and when the judge initially saw it and read it, he read it as 8.50 p.m., which is what we believed it was. The government there said that it was a.m., but even the judge said that it doesn't look like an a. In fact, it seems to be p.m., and the timing of that would have been after the signing of the two statements. In fact, it would have been immediately after the signing of the second statement, so that if, in fact, the waiver was signed afterwards, then clearly Miranda would have to say that it would have to be suppressed. The only evidence that it was not signed afterwards was the testimony of Detective Tyson, the only testimony whatsoever. Except that he had previously, and even the government had indicated that yes, her testimony, her demeanor, et cetera, should give the court pause with respect to her credibility. Her credibility was seriously in question. The government agreed that it was. The court said that it was. Yet, without any evidence that bolstered her testimony, I'm sorry, her credibility, or anything that went against that, the judge just said, well, I'm accepting it. And I think that was really, that's arbitrary and capricious. There is nothing, I mean, everyone agreed that she was, her testimony was not credible, that she was not credible. There was nothing that undercut that, and yet it was accepted. Did the judge say that her testimony was not credible? The judge said, let's see, and I have some quotes here. He indicated, in fact, he asked the prosecution, isn't, wasn't her, her demeanor, I mean, and her testimony, her actor's testimony, such that it should give the judge, give the court pause in accepting her credibility. It said that she seemed wedded to a position that she took, which was clearly erroneous, clearly not accurate, and even the court mentioned that the jury, it mentioned this in that context that the juries are told that they can disbelieve testimony if the witness seems to have a personal interest or a professional interest in the outcome. And he said that with respect to and in the context of the lack of credibility of this witness. So he, he, he raised the issue. He spoke about the issue. He said that basically it was not credible. You can see that any law enforcement officer may have a bias in a certain direction, but it's still up to the fact finder to determine whether or not that bias drives the testimony or whether or not the testimony is credible and believable, even though the person might otherwise have a bias to not be truthful. And that happens every time an officer gets on the witness stand, every time a relative of a defendant gets on the witness stand. The bias does not automatically mean the witness is not testifying truthfully. This is something the fact finder has to consider in evaluating the testimony. I'm not sure that what you're saying is anything more than recognition of that. Well, when the court itself says that her testimony and her testimony on certain issues and they talked about the many pregnant pauses, the fact that she insisted on something that was clearly untrue, so shouldn't that give the court pause as to accepting her as being a credible witness? And the court paused, but ultimately the court believed her and determined she was credible, didn't he? Well, you know, Your Honor, the one would think that if one says that this, that there are some serious issues of credibility, there should be something that would come in that would make, that would counter that, that would say, well, even though she did not seem to be credible because of these things, there were these other things that would weigh against that. That didn't happen. There was nothing that weighed against her lack of credibility. The issue, of course, is that the only thing that they had, that the prosecution was based on was this statement, so that if the statement went, there was no case. Thank you, Ms. Boyer. You saved some time for rebuttal. Thank you. Let's hear from you again. Mr. Rivers? May it please the Court? Judge, I'd like to reserve two minutes for rebuttal time. Okay. Judge, what's before the Court is, can you cure a brutal violation with the subsequent testimony of the co-defendant? I believe the answer might be yes, but that is not the issue before the Court. The brutal issue is tied to the Rule 29B, sufficiency of the evidence argument. And what was the evidence that the government mustered here? Well beyond, just let me finish the question. What beyond the statement itself, the brutalized statement, did the government offer against your client? Is there any other evidence? We argue no, Your Honor. But because you have to take in the light most favorable to the government, we turn to the government's brief on page 14. It says 1, the government found these or introduced this. It says 1, Mr. Morrell had in his possession the victim's gold chain. Well, we know that, but that may prove nothing other than what would amount to receiving stolen property. Precisely, Your Honor. I want to know what's in this record, and obviously I should ask the same question perhaps more pointedly of your adversary, Mr. Jones. But is there anything in here, in this record offered by the government, other than the statement of A.L. King that would suggest the participation of Mr. Morrell in the shooting and robbery of the other Mr. King? And that is what we argue, Your Honor, that there's absolutely nothing in the record. There's nothing introduced. There was nothing admitted into evidence that would tie Mr. Morrell to this incident, but for the statement that we claim is suffered the Bruton blow. Now, we understand that the Bruton violation can be cured by subsequent testimony of the co-defendant. However, frozen in time is the Rule 29 motion. Rule 29 motion takes no subsequent evidence after a Rule 29 motion is made can now be considered. In your Rule 29, you did not include counts 4 and 18. Is that correct? Am I wrong about that? Your Honor, I believe I included all counts. I believe I included all counts that should be. I know you probably intended to. I intended to, Your Honor. If you face the motion, you can, when you sit down before a brother, you can double-check and let me know if I'm wrong. But, Your Honor, even if I. You did not include 4 and 18. But even if I didn't, Your Honor, a Rule 29 must be considered whether or not it is made by the defendant to counsel or not. At the close of the government's case, the. Say that again. The Rule 29 must be considered whether or not it is made by. Yes, because the. I don't understand that. Judge. The defendant is the person who would be making the motion. Yes, Your Honor. And the Rule 29 motion is made. And the Rule 29 motion is made. I believe it was made as to all of the counts. Your Honor, I may have lumped some, especially the. Especially the possession of a firearm with. The possession of a firearm to commit a violent crime. If you note, the government charged that after each of the. After each of the counts. After each of the other counts, they added the possession of a firearm. And so it was a broad-based Rule 29 that included everything. And we believe that. 18 is the conspiracy to commit robbery. And then 4 is the firearm. Your Honor, if I didn't make it on the record, my intention was that the Rule 29 motion is made at that time. But. I'm sorry. I wanted to go through what was observed on the video. Yes. And why you think that this could not provide evidence of participation in the crime. Other than just receiving or selling stolen goods. Wait. Your Honor. It occurred a few hours after the robbery and the shooting. Is that correct? Yes. And two different stores. Yes. And it was Mr. Morrell who was really in charge. He seemed to be the one who was directing the whole transaction. It appears. Okay. But in your view, and we'll hear from the government on this, you don't think this links him in any way or insufficiently? Not to the charge of it. To the charge of robbery and murder. Your Honor, the count that was missing from the government was possession of stolen property. Now, even all of those evidence in the light most favorable to the government, that does not go to the charged offenses. The fact that Mr. Morrell may have appeared at the jewelry store with the jury, the fact that he may have conducted the transaction inside, the fact that he wore a baseball cap at the store has nothing to do and does not in any way establish any of the elements of the charged offense. Remember what, in Rule 29B, what the court must look at is what evidence that the government that came in so that a reasonable jury can in fact find that the government has proved its case at that juncture. No reasonable jury can say that the fact that Mr. Morrell appeared with the gold chain, the fact that he appeared at the store, the fact that he conducted any transaction at the store, what does that have to do with a first degree assault? What does that have to do with robbery? How long was that after the assault? What was that? How much time transpired? That would be crucial, wouldn't it? Yes. I believe it was about maybe 14 hours after. It was much closer in time than that. I think it was about 14 hours after. So if Mr. King had testified on direct examination, that is, if he had testified as part of the government's case, then there wouldn't be any problem. Is that correct? That would be correct, Your Honor. But the fact that his testimony came on the defense side of the case is what caused the problem. And it does, Your Honor, because sailing in the rule for Rule 29 motion, it is frozen in time. No subsequent testimony after the Rule 29 can now cure what should have been granted as Rule 29.  Am I correct in my recollection that Judge Gomez did not rule on your Rule 29 motion at the close of the government's evidence, but rather reserved ruling on it and subsequent Rule 29 motions after all the evidence in the case was in? That is correct, Your Honor. And Judge Gomez didn't make a point to say that it is preserved and he will rule at some later date or later time. But he didn't make a ruling at that time. And in terms of the sequence of events here that my colleagues have asked you about, the robbery and attack on Mr. Leal King occurred after midnight on January 28th. Is that right? 27th would have been before midnight. I think the evidence is it happened around midnight, Your Honor. All right, around midnight. And then it's the following morning that Mr. Murrell and Mr. King take the jewelry to the downtown stores, Vishnu and House of Raja. Yes, somewhere the following day around 12, maybe midday, 1 o'clock, somewhere around there. I think that's what the testimony was that at that time did they appear. All right. So, Your Honor, while the government or while the brutal issue can be cured with subsequent testimony, they cannot cure a Rule 29. And if this court was to find that there was a violation, because all we're arguing is that the statement itself was not redacted sufficiently enough. But even if it was, even if it was, and this court is of the opinion that nothing that Mr. King's statement said could or should be held against the court. So any infirmity in the redaction, any violation of Bruton and its progeny, Gray, for example, really doesn't matter. This is nothing but a straightforward question of Rule 29. Is that right? What does the record show that would inculpate Mr. Morell as of the close of the government's evidence? Is that your position? Nothing, Your Honor, other than what, and the government is brief. If you look at page 14 of the government's brief, the government listed what the government thought was the other evidence that implicated Mr. Morell. And if you note, the governor went on and listed them. It's about four matters that they listed. And none of those goes to the elements of the charged offense. Let me ask you a related question. Assuming the redacted statement was, the statement was correctly redacted. Yes. And I understand you're saying it was not in this case. It was not. Correctly redacted. Why do we have a Rule 29 problem? Your Honor, if the statement was redacted correctly, you have a Rule 29 problem because it is the statement itself. Because remember, the statement is supposed to implicate Mr. Morell. So if it's properly redacted, and the instruction is followed specifically by the judge not to hold anything in the statement against the defendant Morell, then nothing in the statement should link to Mr. Morell. You must now look at what other evidence other than the statement that would make it survive the Rule 29. And what I say, Your Honor, is in the government's brief on page 14, the government lists what those evidence are that they found. Now, I will also tell the court, the government indicated that two holsters were found at Mr. Morell's house. And you would recall that the district court didn't allow those two holsters in as part of the evidence. But nonetheless, the government went and lists what the other evidence are. And none of those evidence goes to the element of the charge to offense. And that's what we are arguing, Your Honor. It's an insufficiency of the argument. It's a question of law at this point, that based on the law, the district court erred by not granting a Rule 29. This matter should not have gone to the jury. Roberts. We understand your argument. You have some time. Thank you. Thank you. Thank you. Good afternoon, Your Honors. Nelson Jones on behalf of the appellee, United States of America. Two straightforward questions, Mr. Jones. Yes, sir. After the government rested its case, knowing that the redacted statement of Mr. King was in the evidence, was in evidence, could it be used for any purpose other than to point the finger back at Mr. King himself, as opposed to being evidence in support of the guilt of Mr. Morell? It could not be used in support of the guilt of Mr. Morell. All right. So with that, the second question then is, what other evidence did the government put into the prosecution side of the case that would point toward the participation of Mr. Morell in the robbery and shooting? The first thing the government presented was the fact of the shooting, the date and time of the shooting. For clarification purposes, the shooting took place after midnight on January 28th. How long after midnight? I believe it was like 23 minutes after midnight. Okay. So between midnight and 1 o'clock in the morning. That's correct. So 1230, let's say. And the same morning, not the next morning, but the same morning of January 28th, is when Mr. Morell and Mr. King went to the two jewelry stores to sell the jewelry. What time did they go? They went approximately 10 o'clock in the morning. Okay. About 10 hours later. And that's Monday morning, right? The incident began to unfold, at least in terms of planning, prior to midnight on Sunday. The shooting would have occurred technically on Monday morning around 1230 a.m., and then the transaction at the jewelry store takes place in the morning once business opens on Monday morning. That's correct. So you have that testimony in. You have the testimony from both Leal King Sr. and his wife that he had the jewelry in his possession on him when he left the home that afternoon to go to the racetrack. You have the testimony also that as he arrived home, he was accosted, shot multiple times, both in the head and in the torso, and his jewelry was taken from him. The testimony of his wife was that the only piece of jewelry that was taken were the hand bracelet and the chain. His rings were still on. His watch had been dropped on the ground. But the hand bracelet and the chain were gone. You have the video of both Mr. Morell and Mr. King in the House of Raja jewelry store. You have the testimony. What you're saying actually is that the fact that they were in possession of goods that were stolen in the course of a robbery 10 hours after the robbery is sufficient to prove beyond a reasonable doubt that, as I say there, that Mr. Morell was the robber. That's what you're arguing. The argument is that the juncture that we're talking about, the Rule 29 at the close of the government's case, is evidence in the light most favorable to the government, not beyond reasonable doubt at that point. At the point we get to the... But part of that test has to be that the evidence that you offer would ultimately be enough to prove guilt beyond a reasonable doubt. That's correct. At the second Rule 29, that is at the close of all the cases... Just for clarification, in the light most favorable to the government does not eliminate from the equation the need for the government to always prove guilt beyond a reasonable doubt. And, in fact, the government should not even charge a case unless it believes it has information or evidence to convict beyond a reasonable doubt. Going back to my question, the fact that someone is in possession of property that was stolen in the course of a robbery and they possessed that 10 hours after the robbery, you're saying that that is sufficient to convince a reasonable juror beyond a reasonable doubt that the person in possession of the stolen property was, in fact, the robber. Yes, because the jury is allowed to make reasonable inferences based on the test. Well, how is that reasonable? 10 hours later? If it were two hours, I think you'll agree with this. If it were an hour later, I'm not sure there'd be much of an argument, although one could make that argument. If it were in the middle of the day, maybe not with the time we have here. If it were a week later, I don't think you'd make the same argument, could you? Right. What about two days later? No. One day later? Depends on what time of day the problem is. One rotation of the clock, 24 hours, let's say. 24 hours, it's getting weak. It's getting weak. But we're talking about immediately upon the store. Well, immediately. You put the rabbit in the hat when you say immediately. No, no. I'm talking about immediately upon the store being open, they're there with the jury. The store opens approximately 9 after 9. But that doesn't negate the 10-hour time frame. If the store opened at 1 in the morning, then the immediately would make some sense. That's right. But immediately here is 10 hours later. Yes. Why isn't it an equally reasonable inference for a trier of fact to draw that Murrell is a fence? Known to be a fence to whoever the perpetrator of this violent crime was, that perpetrator turned it over to Murrell to sell. Why isn't that on this record, anyway, just as reasonable an inference for a trier of fact to reach? Because of the conduct of Mr. Murrell in the store. In addition to him being on the video, you have the testimony of the two clerks at the Vishnu Jewelry Store, who testified that Mr. Murrell was the person they were dealing with, that Mr. Murrell gave him a false identity as far as who he was, that Mr. Murrell also did not want to conduct a transaction towards the front of the store, but towards the back of the store. Because he's selling stolen property. That's not inconsistent with him being a fence. He knows that what he has, he has no right to possess, and he's selling stolen property. But once again, we submit that the jury has a right to reasonably infer whether in the case that jurors claim that it could have been possession of stolen property, or they could infer that, in fact, it was the proceeds of disarmed robbery. I guess what we're troubled with, at least I'm troubled with, is are both inferences equally reasonable? Given the time frame, we have 10 hours. Is it equally reasonable for Juror A to assume that he has the jury 10 hours later, this guy's a fence, and folks in the neighborhood know he's a fence, and he's the guy to go to to get rid of a bit of stolen property. That's Juror A's conclusion. Juror B's conclusion is, well, if the robbery was 10 hours earlier, there's a good chance that this guy was probably involved in the robbery. Which of those two conclusions is more reasonable than the other, or are they equally reasonable? I think the one that deals with the fact that the victim was shot and the jury was stolen is more reasonable that the defendant is the one who took it versus he's judging possession of stolen property. Well, you said yourself a few minutes ago, if we're talking about a 24-hour period, it gets pretty attenuated. That's pretty weak. If the possession was a certain – there's obviously no set time that would work one way or the other. Right. But the longer – Well, 10 minutes would work for you. If it was 10 minutes later, anyone would be hard put to suggest that that's not sufficient for a reasonable juror to connect the possession with the taking. The issue here is whether or not 10 hours is sufficient to allow that nexus between the possession and the taking to be established beyond a reasonable doubt in the mind of a reasonable juror. Right. And the government submits that it does. Right. Let me ask this. It's a different subject. There were some statements made by Mr. King's attorney about the validity of the statement. I know it's been through suppression, and despite Ms. Bourne's very skillful argument, the district court agreed with her – disagreed with her, I'm sorry. But – and I did not look at the photos of the scene, but according to the briefs, the statement is that Mr. King and Mr. Morrell waited in some bushes for the – Mr. Leal, is it? Leal. Mr. Leal to arrive. They saw him coming. They then ran to where he was, going up some steps. According to the argument in the brief is that there are no bushes for him – for them to have waited in. And the distance between the bushes and where Mr. Leal would have gone up the steps is 344 feet, which would suggest it would have been difficult – it's the length of a football field – difficult for them to run from where they laid in wait, which wouldn't have been concealed according to the photo, to where he was. How do you respond to that in terms of the veracity of Tyson? The – I believe the problem here that Attorney Bourne had is that she's talking about one set of bushes that was down below from where the house was, down the street from where the house was, and there was another set of bush that was above from where the house was, which was much closer to the house. That's the bushes we were talking about. She's talking about the bushes that were further down the hill, further away from the house. And so I believe that's where the – her confusion comes in with respect to exactly what bush they were talking about. Right. Well, I thought she was saying there were no bushes, period, for him to wait in. Excuse me? I thought she was saying there are no bushes – Oh, no. She was saying there were bushes, but they were further down. She's saying there were a set of bushes further down, not the ones – Right. I thought she was saying there weren't any bushes. She argued in her closing argument and conceded, I believe, that there were bushes. If I recall, the argument was simply that they weren't large enough to conceal the presence of two people. That's correct. But she was talking about – the government's position is that she was talking about a separate set of bushes – What was the – I'm sorry. What was the skepticism that your opponent has cited on the part of the district judge here? What was bothering the district judge here about this testimony? What was bothering the district judge was Detective Tyson testified that Mr. King had not been apprehended. And she used a term in her report that basically meant he was apprehended. He was in custody. And so the court had paused in terms of because Detective Tyson was adamant she didn't arrest him. And the court says – well, excuse me. The court says – the court said, the district judge said, your statement says he was apprehended. What does apprehended mean to you? And that's where the – caused the district judge to have paused. However, the testimony of Corporal Esprit, who was also with Detective Tyson, and for clarification, Mr. King was already in the interview room when Detective Tyson showed up. And according to Mr. King himself in his statement, in his testimony at a suppression hearing, he didn't allege that Detective Tyson is who handcuffed him. He's saying some other officer who he didn't identify. And Detective Tyson's position was he was never handcuffed. So when I got there, he was there. He asked – I gave him – I even gave him my lunch. I gave him a soda. When he had to go to the bathroom, he went to the bathroom. And so the government submitted to the court that based on the evidence presented in the suppression hearing, the first suppression hearing, that was sufficient for the denial of the motion to suppress. It's clear that whether she gave him a sandwich, went to the bathroom, whatever, it's clear, that he was in custody when he received the station notice? Clearly he was in custody, yes. Clearly he was in custody. The question then becomes – came to whether the waiver had been effectuated prior to the taking of the statement. And that's when Corporal Esprit came in, because he testified that he witnessed the taking of the waiver, and that was done in the morning. And also, the government must point out that the time written on the waiver was written by King himself, not by any of the officers. He wrote in the time himself. Mr. Jones, if Mr. Rivers' position is correct, that this is a pure Rule 29 issue, and we are simply called upon to look at the condition of the record, as of the point that the government rested its case, we don't need to reach the Bruton issue. But if we were to examine the Bruton issue, I'm very curious as to the government's position. I reread on the plane ride down here yesterday the statement, the redacted statement, the And I counted 108 times where the name Gary was changed to the word someone, and where the word person was used 84 times in place of the masculine pronoun he. I would really like to know the government's position as to whether or not there could be any doubt in the mind of a finder of fact that the person referred to in those redactions was Mr. Morrell. Yes. There could be a doubt. There could be a doubt, because he's the only other person in the courtroom. That's correct, Your Honor. But there's case law that says even where you only have two people that are present at the defense table as defendants, once there's a valid redaction of the statement. Well, valid is the question here, though. Correct. Is that redaction valid? That's what you're being asked. If it's a valid redaction, that's one thing with only two defendants. If it's not a valid redaction, and by that I mean if it's not, if the striking out of the name is not sufficient to prevent the jury from concluding, well, they struck it out here, but we know who they're talking about. They're talking about the other guy who was on trial. Then that's not a valid redaction. And also, let's note that the actual redacted statement was not sent into the jury. They had the testimony. Well, it just didn't go out, but it was presented to the jury by testimony. It was presented by testimony. That's correct, Your Honor. That's correct. And so we submit to the court the fact that the statement did not identify Morrell, or even his nickname, because it was his nickname that was being used in the statement, which is Gary. His real name is Roland. So it was a nickname that was being used in the... But that's not really the issue, is it? I mean, the issue ultimately is whether this statement, as redacted, continues to point to that other guy sitting in a defendant's chair in the courtroom. And your position is that this statement, as redacted, would not be viewed by a reasonable finder of fact as pointing to that other guy in the courtroom. That's correct. For purposes of future cases, I would not want you to rely on that proposition. No, Your Honor. I understand, Your Honor. I know there was accrued obstruction given at the end of the trial. Was accrued obstruction given prior to that when the statement was read? Yes, there was. There was. Yes, there was. There was accrued obstruction given. Additionally, as I indicated, the court instructed the statement not be sent in with the jury at the conclusion of the trial. With respect to the Bruton issue, however, in Bruton, O'Neill, and Marsh, once the defendant has testified and is subject to court, once the defendant that provides the statement has testified, Bruton, Marsh, and O'Neill are out. Those are not Rule 29 cases. That's the problem we're having. If there were not a Rule 29 motion here, the government's position would be golden. There would be no question about it. The problem here is the Rule 29 motion. That's the problem, which takes out of the equation at the Bruton the fact that King got on the witness stand and that Murrell had an opportunity at that point to cross-examine. In terms of Rule 29, that just doesn't matter. Isn't it correct, and Chief Judge McKee asked this question earlier, that Mr. Rivers' Rule 29 motion nevertheless did not extend to all of the counts against Mr. Murrell? I believe you're correct. He focused on the fact that the government had failed to present evidence of the interstate commerce element of the federal firearm offenses. The court dismissed, I believe, was four counts of the indictment because the government failed to present the interstate nexus element of the firearm. That's what his focus was on in his Rule 29. Unless the court has some other questions for me, that concludes my presentation. Thank you, Mr. Jones. Mr. Rivers, while Ms. Warren is addressing this, if you could just tell, maybe you know already when you come back up, let me know where in the appendix your motion is so I can take a look at the actual text of the motion. Thank you. Your Honor, first of all, with respect to the waiver, the prosecutor indicated in his argument just now that it was written by Mr. King himself, and that is true. And that is one of the reasons why not only did the judge read it as a P, but Ayala's name was written by him both in cursive and he printed it. The suspect, whether it's an A or whether it's a P, did not look like his written A or his printed A. In fact, it looked much more like a P. The credibility, the major credibility issue with respect to Detective Shakira Tyson was not simply that set forth by the prosecutor. It was actually, in fact, that she had submitted an affidavit in which she did say that Mr. King, my client, was apprehended and transported. And not only does the judge tell her, doesn't that mean that he was arrested, and she said no, she said that apprehended and transported meant the same thing, but also, and even more importantly, she insisted that that affidavit was the affidavit which she had supplied in order to obtain the arrest warrant. And even when it was pointed out to her that in the affidavit itself, she indicated that they had been arrested, that the warrants had already gone out, that the persons were apprehended, she still insisted that it was no, that this was the affidavit that she submitted in order to obtain the arrest warrant. And she just refused to back off of that, even when the judge made it quite clear that there was this problem. With respect to the Bushes, yes, I did have the two photos. That goes to my first argument also, that as I told the court, both at length at the charging conference the night of the 3rd, and put onto the record the morning of the 5th, my defense was not obvious. I had put in approximately 20 photographs, and there were other, the entire defense was really to be made in argument. That was when everything was to be tied together. That's why I asked the judge for an hour and a half to do it, he gave me 30 minutes. As I said, I tried to run through as much of it as I could. Why was the entire case in your argument? I thought the entire defense case, as to Mr. King, was simply, I didn't mean the second statement. I didn't say that. Somebody must have made it up, but I didn't say the second statement. Didn't your defense have to be that the second statement was never made, or never intended? Yes, but he did not make the statement. Why does that limit you to making that case at the closing, especially when your client took the stand? This is not making sense to me at all. The major way I can show that the statement was not his statement was that, in fact, it did not even align with the evidence. As we talked about, for instance, the bushes at the top and the bottom, which could not possibly have hidden anyone. I had pictures of that, but throughout the testimony of the victim himself, the testimony of his son as to what happened. Do you have any case law? Well, let me start here, since we have gotten into what you characterize as your first issue. You begin in your brief by arguing this as an ineffective assistance of counsel claim, but this really isn't an ineffective assistance claim, is it? I didn't argue ineffective assistance of counsel. I said that the court... You said the court basically restricted you... It made it impossible for me to provide effective assistance of counsel. All right. With that clarification, then, that gets to my second point or my second question, that renders this a pure abuse of discretion question, right? Can you point to any case law that would demonstrate that limiting you to a half an hour in a two-day case is an abuse of discretion? And I would add, you ended up, practically speaking, not limited to 30 minutes, but rather to 35 minutes, I think. 33, I think it was. 33. When I needed an hour and a half just to lay out the issue. That's never a good idea in front of a jury in a two-day case. The issue is that there were so many... I'm sorry. I'm trying to focus on the beginning of your question, which I have now forgotten. Well, how is this an abuse of discretion, and can you point to any case law that has held that such a limitation exists? I have found no case in which a court has, in fact, done this. Well, I found none because it would never be an issue on appeal. That's why you can't find it. It would never be an issue on appeal. Very few arguers would make that as an appellate argument. But it's also probably likely that no judge has so drastically actually made... opposed such limits. Because basically, I could not really argue my case. I put in my brief, I said there were ten other things that I had in my notes that I couldn't even touch. Ten other issues. But even in the ones that I did, the issue was that the statement that was made and the facts on the ground did not even match. Why didn't you make further objection at the end of your closing argument and articulate on the record those points or those arguments that the time restrictions precluded you from making? You did not do that. Why not? I did not think it was necessary, but I did put on the record... What I was told at the charging conference was that I'd be allowed to put my objections to the restriction on the record. And I was. I had no reason to believe that I would have to go into detail at that time. The court had made it quite clear, not only the night before, but even on that day, that the restriction was not going to be limited. In fact, he had said when we came in that, oh, well, we're giving you five extra minutes. You can now have 35 minutes. And then at some point he then took it back to 35 and said, no, it's back to 30. And then at the end said, well, we actually gave you 33. So it was clear that I wasn't getting any more. It just would have been a useless exercise. But as I said, you're correct in that the overall defense was that this is not his statement. He did not make the statement. But given the way that the prosecution was presenting these cases, if this is what happened, I thought one of the best ways of showing that this statement was not true was to show that it didn't even match the facts on the ground. And that's what I was trying to do and couldn't do. Thank you. Mr. Rojas, you reserve two minutes, I think. Yes, Your Honor. Your Honor, the government argued just a little while ago before, Your Honor, that the jury could make an inference as to the evidence other than the statement in order to determine Mr. Morell's guilt. Well, Your Honor, it is not an inference for the jury at this point. In fact, it is not even to get to the jury. It is the judge, and it's purely a question of law. It is the judge, the gatekeeper at this point, who is to make the decision. A decision is not given to the jury for the jury to make an inference. And what the judge must consider is whether or not a reasonable jury could find guilt beyond a reasonable doubt. Now, we understand that it must take the evidence in the light most favorable to the government. But it's a judge issue. It is not a jury issue at this point. Your Honor, you would ask me to focus in the transcript where my Rule 29 motion was made. If Your Honor would look at the joint appendix at 454 onwards, you will see where the, I started at 454 to the top, and I pretty much went down all of the counts. And when you get to, when we get to 460, you will see that the court cut me off at 460. It says reading from 459. Your Honor, I must ask another question before we go further. You also took under advisement certain aspect. But on page 456. 456, yes. Line 19, you say there's no evidence with respect to it being shipped or transported interstate commerce also. And as both of those elements are missing, and as such, he is entitled to a Rule 29 as to count 3. And you then say the next count that applies to Mr. Morell is count 8. Or count 4. I was never much at math, but I think 4 lays between or lies between 3 and 8. So you went from count 3 to count 8, unless later on you came back to count 4. I believe it, Your Honor. All right. Your Honor, if you keep going, Mr. Morell is really making a Rule 29 motion as to all the count that applies to him. And where did you say that? Well, Your Honor, if you look at Your Honor, the very last count, well, count 16, that count that applies to Mr. Morell basically asks that or state that he's using a firearm, unlicensed firearm, during the commission of a robbery. The Court, I think I understand your position. I see. We are going to proceed to the extent necessary to a defense case. Do you understand? The defendant is making a Rule 29 as to all of the counts. But the question is, where did you say as to all of the counts? You went through. Clearly, he stops at count 16. That's at the top of 453. So you can argue you never got to count 18 because the Court said, I understand we're going to proceed. But where did you say you were making a Rule 29 as to all of the counts? You'd be in a better position, would you not, if you had just made a general Rule 29 motion and not been specific as to any of the counts? I would be in a better position, Your Honor. I would. But I think I was attempting to not only do that but pointing out where the government evidence failed to each count one by one. But having done that, if you excluded other counts, then you cannot rely upon a general motion, can you? A general motion would have referred or would have, by implication, referred to all of the counts. You, on the other hand, chose to be specific and apparently did not mention 4 and 18. Well, Your Honor, Your Honor, and I don't have the cite for it. But the defendant is entitled to a consideration of a Rule 29 at the close of the government's case whether or not the defendant makes such a motion. Well, if you could find a cite that says that, I'd like to take a look at it. Yes. Find a case that says that and do a Rule 28J letter. Yes. I will. But, Your Honor, absent that . . . You're saying the court has a sua sponte obligation to determine whether or not the evidence is sufficient to allow the defense to put on it, to require the defense to put on a case? That's what you're saying? Well, the defendant has no requirement to put on a case, period. No, there's no requirement for the defense to put on a case. You can just sit there at the end of the government's case. You stand up and say, nice shot, government. You blew it and you argue to the jury and the judge will instruct you, my client, does not have to put on a defense. In this case, you choose not to put on a defense, as we're entitled to, because the government's case is so obviously underwhelming that they simply have not proven the guilt beyond a reasonable doubt. You don't have to put on a defense at all. But, Your Honor, if you would take a look at . . . I have it as the joint appendix 459. With respect to that, the court break in and says, I think I understand your position. We are going to proceed to the extent necessary on a defense case. Right. So, basically, the court cut off the defendant, Morel, from continuing his Rule 29 motion. You haven't previously argued that, though, have you? Have you at any point suggested in your briefing that the court cut you off and did not permit you to make as extensive a Rule 29 motion as you may otherwise have wished to do? No, Your Honor. That was not part of my focus. In fact, Your Honor, until Your Honor brought it to counsel's attention, I was under the impression that the Rule 29 had to go to all of the charged offenses of Mr. Morel. I was under the impression that it went to all of the charged offenses of Mr. Morel. Your rebuttal time is up. Is there anything else that you need to say that's consistent with the concept of rebuttal? Your Honor, of course, while we didn't argue before Your Honor, we ask that the submission on the record also be considered. Thank you very much, Mr. Rivers. Taking that under advisement, Ms. Bourne, Mr. Rivers, Mr. Jones, thank you very much. Thank you.